IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Keith Mauldin, | ) | Case No. 6:17-cv-02650-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Leggett & Platt, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of Defendant's decision to deny Plaintiff's claim for stock option benefits under a Deferred Compensation Program Plan ("the Plan") governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1) ("ERISA"). The parties have filed a joint stipulation and respective memoranda in support of judgment pursuant to the Court's Specialized Case Management Order for ERISA benefit cases. The parties agree that the Court may dispose of this matter consistent with the joint stipulation and memoranda. After a thorough review, the Court affirms the denial of benefits.

## BACKGROUND

Plaintiff was employed by Defendant as a Director of Consumer Sales for the Urethane Foam Division. ECF No. 20-1 at 9. On December 29, 2005, Plaintiff elected to defer $17,614.00 of his compensation under the Plan. *Id.* at 37–38. This amount was used to acquire options to purchase 3,835 shares of company stock at a proposed

1

purchase price of $22.96 per share. *Id*. at 9. The options were granted as of December 29, 2005. *See* ECF No. 20-2 at 6 § 4.2. Pursuant to the terms of the Plan, the options vested and could be exercised any time after March 15, 2007, until the options expired. *See id*. at 7 § 4.4. According to the terms of the Plan, the options were valid for the ten years following the grant date, at which point the options expired. *Id.* at 6 § 4.3; 20-1 at 39–40. Thus, the options expired on December 29, 2015. ECF No. 20-1 at 6. The Plan allowed a participant 30 days after the expiration date to pay the exercise price and any other required amounts; when no action occurred on the part of Plaintiff, the exercise was void. ECF No. 20-2 at 7 § 4.4. Plaintiff failed to contact Defendant concerning the exercise of the options prior to the expiration date or within the 30-day period following the expiration date.

In October 2015, Defendant sent Plaintiff written correspondence regarding the upcoming expiration of the options; however, it appears the mail was sent to an incorrect address. ECF No. 20-1 at 2, 6, 8. On or about July 27, 2016, one of Defendant's employees was able to reach Plaintiff by phone. *Id*. at 11. Defendant's employee informed Plaintiff that he was due compensation and would receive more information. *Id*. Plaintiff received a phone call from Annette Garner, Compensation Manager, who told him that the prior phone call was an error and that he was not due any compensation because the options had expired. *Id*. at 10–11.

On August 9, 2016, Plaintiff sent correspondence to Garner's email address and addressed to the Committee Members informing that that he had received correctly

addressed mail from Defendant's Retirement Plan.[1]  20-1 at 11. Thereafter, Defendant informed Plaintiff that his August 9, 2016, correspondence had been forwarded to the legal department and was construed as a claim for benefits.  *Id*. at 9–11.  Defendant denied Plaintiff's claim on August 18, 2016. *Id*. at 9–10. Plaintiff appealed, and Defendant issued a final denial letter on October 17, 2016. *Id*. at 6–7.

## **THE PLAN**

The parties agree that the following terms, as defined by the Plan, are relevant to the current action:

> 3.2 *Election*. A Participant's Election must be made on or before December 31 for Compensation relating to the following calendar year, except that newly eligible Participants may make an Election during the calendar year within 30 days of first becoming eligible for participation for Compensation earned subsequent to the date of Election. Elections may be modified or withdrawn until such time as an original Election could no longer be made.
>
> The Committee may provide for Elections at any other times with respect to all or any part of Compensation or Contributions to the extent that such Elections are consistent with the requirements of Section 409A.
>
> 4.2 *Grant Date*. Options will be granted as of the last business day in December of each year or such other date as the Committee determines (the *"Grant Date"*).
>
> 4.3 *Term of Options*. The term of an Option will expire 10 years after the Grant Date (the *"Expiration Date"*).

---

[1] Defendant informed Plaintiff that the Retirement Plan and the Deferred Compensation Plan are different departments; however, Plaintiff noted in another email that both departments are listed at the same address. ECF No. 20-1 at 8.

4.4 *Exercise of Options*. Options will be exercisable on March 15th of the year following the year the compensation is earned and vested. However, despite any later specified date for exercise, any vested portion of an Option will become exercisable in full upon the death or Disability of the Participant.

An Option may be exercised by delivering a written notice to the Company accompanied by payment of the Exercise Price for the shares purchased. Such payment may be made in cash, by delivery of shares of L&P Common Stock (held for at least 6 months) or a combination of cash and Common Stock. Any such Common Stock will be valued at the per share closing price of the Company's common stock on the trading day immediately preceding the date of exercise or at such other time as determined by the Committee. No shares will be delivered in connection with an Option exercise unless all amounts required to satisfy tax and any other required withholdings have been paid to the Employer.

An Option may be exercised only by a Participant during his life or, in the case of Disability, by his guardian or legal representative. Upon the death of a Participant, the Option may be exercised by his Beneficiary or, if the Participant fails to designate a Beneficiary, by his legal representative.

If any Option has not been fully exercised on the Expiration Date, the unexercised portion of the Option shall be deemed exercised on such Expiration Date, provided the then market price of a share of L&P Common Stock exceeds the per share Exercise Price. In such event, shares of Common Stock will not be issued until the Exercise Price and any other required amounts have been paid. If the Company has not received payment of the Exercise Price and any other required amounts within 30 days after the Expiration Date, the exercise will be void and the Company will have no further obligation to the Participant with respect to the expired Option.

ECF No. 20-2 at 6–7.

**APPLICABLE LAW**

Where an ERISA plan confers upon its administrator discretionary authority in the exercise of its power, the administrator's denial of benefits is reviewed under an abuse-of-discretion standard. *Hooper v. UnitedHealthcare Ins. Co.*, 694 F. App'x 902, 907 (4th Cir. 2017). The parties agree that the Plan grants the administrator discretion to interpret or apply its terms. ECF No. 20-2 at 10 § 7.2 (granting the committee "such authority as may be necessary to discharge its responsibilities under the Program, including the authority to: (a) interpret the provisions of the Program").

"Under this deferential standard, the administrator's decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently." *United McGill Corp. v. Stinnett*, 154 F.3d 168, 170–71 (4th Cir. 1998) (internal quotations omitted). A decision is reasonable when it "is the result of a deliberate, principled reasoning process, and is supported by substantial evidence . . . ." *Helton v. AT & T, Inc.*, 709 F.3d 343, 351 (4th Cir. 2013) (internal quotations marks and citation omitted). In evaluating whether a plan administrator abused its discretion, this circuit had identified the following eight nonexclusive factors for consideration:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

5

*Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 342–43 (4th Cir. 2000).

## DISCUSSION

***Defendant Did Not Abuse Its Discretion in Denying Plaintiff's Claim for Benefits***

The Court finds that Plaintiff failed to follow the clear and unambiguous terms of the Plan. *United McGill Corp.*, 154 F3d at 172 ("[T]he plain language of an ERISA plan must be enforced in accordance with 'its literal and natural meaning.'" (citation omitted)). The Plan outlines the necessary steps to exercise the options and explicitly states that "[t]he term of the Option will expire 10 years after the Grant Date." ECF No. 20-2 at 6 § 4.3. It further provides that if an option has not been fully exercised on the expiration date, stock will only issue if the participant pays the exercise price within 30 days of the expiration date. *Id*. at 7 § 4.4. After that date, "the exercise will be void and the Company will have no further obligation to the Participant with respect to the expired Option." *Id*. Here, it is undisputed that Plaintiff's options expired on December 29, 2015. He failed to exercise his options and failed to pay the exercise price during the following 30 days; thus, Plaintiff's claim for benefits should be denied under the plain language of the Plan.

Plaintiff contends that Defendant abused its discretion by failing to take reasonable steps to obtain Plaintiff's correct address. ECF No. 22 at 10. While the Court acknowledges that it would have been compelling that Defendant had Plaintiff's correct address and apparently failed to cross-reference the addresses available to them if Defendant were obligated under the Plan to contact Plaintiff regarding the expiration of

the options. However, here there is no evidence that Defendant had a duty to initiate such contact. Even if it were Defendant's habitual practice to notify Plan participants with respect to approaching deadlines, this habit does not alter the terms of the Plan—which does not provide any obligation to contact—or create such a legal duty. The Court also notes that Plaintiff fails to provide any authority for its proposition that because Defendant attempted to contact Plaintiff, it created a legal duty which was then breached by Defendant.

Plaintiff further argues that Defendant materially misrepresented the terms of the Plan by telling him that he was entitled to exercise the stock options after they had expired and that Plaintiff detrimentally relied on the material misrepresentation. [2] ECF No. 22 at 8. There is no evidence that Plaintiff detrimentally relied upon Defendant's employee's statement that he had time to exercise the stock options. Because the options had already expired, Plaintiff did not suffer a pecuniary loss as a direct and proximate result of any purported reliance upon Defendant's statements. On the other hand, if Defendant made a special exception for Plaintiff, as he is requesting here, such an exception would be a breach of Defendant's fiduciary duty to the Plan and other participants. *See John*

---

[2] Plaintiff cites to the Fourth Circuit Court of Appeal's decision in *Griggs v. E.I. DuPont De Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001), in support of his argument. However, the facts in *Griggs* are distinguishable from the facts in the present action. As an initial matter, the plaintiff in *Griggs* suffered a financial harm as a result of a material misrepresentation by the defendant; here, Plaintiff did not suffer a financial hardship because the options had already expired. Moreover, the *Griggs* court determined that the defendant knew the plaintiff was operating under a material misunderstanding which was likely to cause him harm and, accordingly, the defendant breached its fiduciary duty by staying silent. Here, Plaintiff took no action based on Defendant's statements; in fact, his inaction for the previous ten years caused the loss of stock options.

7

*Blair Commc'ns Profit Plan v. Telemundo Grp.*, 26 F.3d 360367 (2nd Cir. 1994) ("Where fiduciary duties arise under ERISA, they must be enforced without compromise to ensure that fiduciaries exercise their discretion to serve all participants in the plan.").

With respect to Plaintiff's argument that Defendant abused its discretion by changing the basis for the denial of benefits and failing to afford him an opportunity to appeal the second denial, the Court disagrees. Plaintiff was denied benefits because he failed to exercise his options before they expired under the terms of the Plan. ECF No. 20-1 at 6–7 (noting in the denial of the appeal that Plaintiff failed to exercise the options prior to the expiration date or within the following 30 days and stating that it was Plaintiff's "full and sole responsibility to exercise [the] options prior to the Expiration Date, whether or not [his] current address [was] known to the Company"), 9–10 (stating in the initial denial of benefits that Plaintiff "failed to contact the Company concerning the exercise of [the] options prior to the Expiration Date" and noting that the options "expired as of January 28, 2016 . . . leaving the Company with no further obligation in this matter"). Thus, Defendant was not required to afford Plaintiff a second opportunity to appeal the denial of benefits.

*** Plaintiff is Not Entitled to Equitable Tolling ***

Plaintiff argues that, if the Court finds that his time to exercise the stock options had expired, equitable tolling is appropriate in this case. ECF No. 22 at 16. The Court disagrees. As explained above, Plaintiff's stock options expired before he took any action to exercise them or proffer any payment, as required under the Plan. It was Plaintiff's failure to act during the ten-year period that resulted in the loss of his options. Equitable

tolling is not appropriate in this case because Plaintiff's inaction would dictate against an extreme equitable remedy.[3]

### *Attorney's Fees and Costs*

Plaintiff has requested attorney's fees and costs pursuant to 29 U.S.C. § 1132(g). Section 1132(g) states in part that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The Fourth Circuit Court of Appeals has adopted a five-factor test to guide courts' discretion in determining whether an attorney's fee award is warranted under ERISA. The five factors are: (1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993). Plaintiff has not established a sufficient basis for the Court to award attorney's fees and costs. The Court, therefore, in its discretion denies the request. The Court also denies Defendant's request in their pleadings for attorney's fees and costs.

---

[3] The Court notes Defendant's argument that Plaintiff is limited to the remedies authorized by ERISA, which does not provide for equitable amendment to the terms of the Plan. *See, e.g.*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987). The Court concludes that it does not need to reach this argument because Plaintiff's inaction led to the expiration of his stock options.

Although the Court ruled in favor of Defendant, Plaintiff did not act in bad faith and was not otherwise culpable. An award of attorney's fees to Defendant would not deter others from filing actions against the Plan. Plaintiff brought the action to benefit himself and not a class. The arguments by both of the parties were well-reasoned in dealing with a unique set of facts in a complex area of the law.

## CONCLUSION

Accordingly, Defendant's Motion for Judgment on the Record is **GRANTED** and Plaintiff's Motion for Judgment on the Record is **DENIED**.

IT IS SO ORDERED.

                                          s/Donald C. Coggins, Jr.
                                          United States District Judge

January 31, 2019
Spartanburg, South Carolina